IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| UNITED STATES OF AMERICA | : | CRIMINAL INFORMATION |
|---|---|---|
|  | : | CASE NO. 4:14-CR-257-WTM-GRS |
| v. | : |  |
|  | : |  |
| JOHN P. JONES | : |  |

### SENTENCING MEMORANDUM

COMES NOW, Jeffrey H. Brickman, counsel for Defendant, John P. Jones, and files this sentencing memorandum for the Court's consideration. As discussed more fully below, Mr. Jones requests a downward variance based upon the factors set forth in Title 18, United States Code, § 3553(a). A careful consideration and application of these factors would not only enable this Court to fashion a just and individualized sentence, but also avoid the imposition of a sentence which is substantially greater than necessary to address the general purposes of sentencing.

I. GUIDELINE CALCULATIONS AND PLEA AGREEMENT

As the Court is well aware, Mr. Jones' guideline range is 188-235 months. However, based on the offense for which Mr. Jones pled guilty, the statutorily authorized maximum sentence is sixty (60) months. The plea agreement provides, amongst other things, that the Government agrees to consider whether Mr. Jones' cooperation rises to the level of substantial assistance, and thereby warrant the filing

of a motion for downward departure or reduction in Mr. Jones' sentence.

## II. APPLICATION OF TITLE 18, U.S.C. § 3553 (a) FACTORS

The Court, following <u>United States v. Booker</u> and its progeny, must give due consideration to the factors set forth in 18 U.S.C. § 3553(a). More specifically, the sentence to be imposed should be "sufficient, but not greater than necessary" to comply with the purposes of sentencing. <u>See</u> 18 U.S.C. § 3553(a)(2)(A)-(D). In the interests of brevity, counsel will briefly address the respective factors and apply them to the facts of the instant case.

### Nature and Circumstances of the Offense

There is no question that the offense conduct in this case was unlawful, extensive, multi-leveled, and well coordinated. The Pre-Sentence Report ("PSR") accurately describes Mr. Jones' role in the offense conduct. Through his expeditious guilty plea, his candid debriefings with the investigative agents, and his continued cooperation with the Government, Mr. Jones has readily admitted to his conduct, and makes no excuses for his actions.

### History and Characteristics of the Defendant

John Jones is 39 years of age, and was born and raised in Atlanta, Georgia by his parents, John Mattox and Brenda Harris. Although his parents separated when he was five years old, Mr. Jones maintained a healthy

...
...
...
...
...

relationship with both, until the tragic loss of his mother, who suddenly died of a brain aneurysm in 2005. Mr. Jones' mother played an integral role in his upbringing, and her absence from his life is still quite difficult to grasp. Growing up, Mr. Jones did not have much by way of material possessions, but he was "enriched" by the love and support of his parents. Mr. Jones credits his parents for enabling him to have the same supportive and loving relationship with his wife and young children.

From an early age, Mr. Jones' parents instilled in him the importance of earning a living. Upon graduation from high school, and after a brief stint at Fort Valley College, Mr. Jones entered the work force. Over the years, he has maintained steady employment, even after charges were filed in the instant case. While some in his position would simply have shut down and felt sorry for themselves, Mr. Jones refused to bend, fully recognizing that he was responsible for supporting his family. He immediately sought after and obtained full time employment. Throughout the investigation and prosecution of this case, Mr. Jones has worked at both Courier Express and Delta Global Services, as reflected in the Pre-Sentence Report ("PSR"). While at Delta Global Services, Mr. Jones was frequently assigned the "graveyard shift," and Express Courier required Mr. Jones to make daily round trip drives from his home in Atlanta, to Tifton, Georgia. Despite a less

than ideal work schedule, Mr. Jones has still managed to balance his work with his commitment to his community, as described more fully below.

As reflected in the PSR, Mr. Jones has contributed a significant part of his life working with the youth in his community. In fact, over the past twenty-one years, Mr. Jones has developed quite the reputation as a successful and highly sought after youth sports coach with the City of Atlanta Parks and Recreation Department. During this time period, Mr. Jones has served as a baseball, basketball and football coach for thousands of youngsters. His teams have won multiple championships, and he has received close to 100 awards and trophies for his accomplishments. To this day, however, Mr. Jones will tell you that his greatest "award" is watching the kids **he** coached become coaches themselves. A prime example of this is reflected in the attached letter by Darryl Slack, an assistant basketball coach at Pfeiffer University, in Misenheimer, North Carolina, who credits Mr. Jones with not only being a father figure to him, but instilling in him the values "Coach Slack" now preaches to those he coaches. To this day, Mr. Jones maintains contact with his former team members, serving as a mentor to them. They, like him, gravitated toward sports not only because they enjoyed the exercise and competition, but because they did not want to associate with those around them who chose a life of drugs and crime. Mr. Jones' impact in

4

his community is further lauded in the attached letter by Ms. Pamela Baker, of Fairburn, Georgia. Ms. Baker, the owner of her own tax and insurance business, credits Mr. Jones for his selfless efforts to be a father figure to countless young men in his community. It is important to note that Mr. Jones' contributions to his community are long standing, and not a "last minute" attempt to try and put himself in a more favorable light before this Court. If given the opportunity, Mr. Jones has every intention of returning to the City of Atlanta Parks and Recreation Department and continuing to give back to his community.

When Mr. Jones is not working, attending his own children's events, or coaching kids, he manages to pursue his other lifetime passion - motorcycle drag racing. Since the age of eight, Mr. Jones has actively competed all over the country, and has amassed untold numbers of awards. Since being placed on Pre-Trial Supervision, and with the permission of this Court, Mr. Jones has traveled outside the Southern District of Georgia to participate in a number of competitions.

The point is this: Mr. Jones, despite his incredibly poor decision in the instant case, is a good, well intentioned and respected member of his community. His poor decision to stray from his otherwise law abiding life will always haunt him, but he refuses to let this chapter of his life define him.

### Mr. Jones' Assistance to the Government's Investigation

There is absolutely no doubt that Mr. Jones has accepted responsibility for his actions, fully cooperated with the Government and its investigation and done everything in his power to assist the Government in its continuing efforts to successfully prosecute each and every defendant in this case. Mr. Jones was first approached by law enforcement on December 14, 2012, when agents executed a search of his business. On that very day, Mr. Jones freely admitted his involvement in the offense, and provided law enforcement with a number of details concerning the conspiracy, including an overview of his involvement in the conspiracy, and the method by which the offense conduct was perpetrated. Within weeks of his initial contact with law enforcement, Mr. Jones retained counsel, and submitted to a series of lengthy and detailed debriefings. During the debriefings, Mr. Jones continued to educate the case agents about the offense, providing them with an "insider" view of the operation. Mr. Jones agreed to make himself available to the case agents going forward, and on more than one occasion, was contacted through counsel to assist in the ongoing investigation. On each occasion, Mr. Jones responded quickly and candidly.

As the Government moved forward in its "pre-indictment" investigation, and began to prepare formal charges against the members of the

conspiracy, Mr. Jones made it clear that he would make himself available to testify before the Grand Jury. While he was never provided that opportunity, and while the Government's case was clearly based on more than just Mr. Jones' assistance, it is not unreasonable to conclude that the Government's case was strengthened by Mr. Jones' early, candid and continued cooperation.

As the Court is aware, this is no ordinary case. It spans multiple jurisdictions, involves the commission of multiple offenses, and of course, resulted in the prosecution of a significant number of individuals. While the vast majority of federal prosecutions result in guilty pleas, and while conviction rates are equally impressive, there is no doubt that early cooperation often serves as the most important "tool" in the Government's arsenal. While the ultimate decision whether to "roll the dice" rests squarely on a defendant's shoulders, there is no question that knowledge of a credible co-conspirator's cooperation can often result in a domino effect. This case is a prime example of that phenomenon. Mr. Jones was the very first defendant to enter a guilty plea, and since that date, multiple defendants have followed suit. As a result, the Government was spared the effort of litigating a host of evidentiary issues and instead, focus its attention on preparing its case against the remaining defendants.

Mr. Jones' cooperation, while significant, is not over. Pursuant to his plea agreement, and consistent with his continuing effort to accept responsibility, he may very well be called upon to testify should any of the remaining defendants proceed to trial. As such, he will no doubt continue to assist the Government in pre-trial preparations and make himself available as needed. The reality, however, is that it may very well be months before Mr. Jones has the opportunity to complete his cooperation with the Government and its investigation and prosecution of the instant case. Therefore, Mr. Jones respectfully asks this Court to take that into consideration when fashioning what it believes to be a fair and just sentence.

Finally, it is important to note that Mr. Jones has demonstrated that he can be trusted while under Court supervision. While on pre-trial release, Mr. Jones has fully complied with the conditions of release, maintained constant contact with his probation officer out of the Northern District of Georgia, timely appeared for court appearances, and fully cooperated with the United States Probation Office during its Pre-Sentence Report Investigation, including providing them with any and all documents they needed to complete the PSR. In sum, he has proven to be reliable and trustworthy, which the Court may consider in fashioning what it believes to the fair and just sentence.

## **General Sentencing Goals**

The Court is to consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence and to protect the public from further crimes of the defendant.

Here, a 60 month sentence is simply not necessary to promote respect for the law, nor is it necessary for Mr. Jones to be justly punished. Make no mistake – Mr. Jones is fully aware that he <u>should</u> be punished for his actions. The question is not whether he should be punished, but how much should he be punished? Mr. Jones is well aware that he will receive a term of imprisonment. A period of imprisonment will more than amply "deter" others from committing similar offenses, and certainly teach Mr. Jones a valuable lesson. It will also allow him more than sufficient time to reflect on the poor decisions he has made, and the direct and collateral effects this conviction will have on his future. The longer he remains in prison, however, the longer it will take for him to return to the work force, support his family, take steps to pay restitution, and to resume becoming a productive member of society.

Finally, an unreasonably lengthy sentence of incarceration also will not accomplish the goals of general or specific deterrence nor protect the public from future crimes of the defendant. Again, a sentence of incarceration fewer than 60

9

months will more than sufficiently address the goals of deterrence.

Mr. Jones and I are well aware of and are genuinely appreciative of the concessions that the Government has made in our good faith plea discussions. On December 15, 2014, we will certainly address how those concessions should factor into the Court's "sentencing strategy." Recognizing that the Court must address the dangers of disparity in sentencing, we will also be prepared to explain why Mr. Jones' case is "unique."

Counsel hopes that this memorandum has enabled the Court to see the "other side" of John Jones – the John Jones who before this, had no criminal history, who led an otherwise honorable life, who has and believes in a close-knit family, who has and will continue to provide cooperation to the Government, and who has and will continue to suffer as a result of his unlawful conduct. In short, Mr. Jones is not the type of person who this Court should need to warehouse to ensure that he never has the opportunity to re-offend.

## **CONCLUSION**

By granting a downward variance in this case, the Court can still arrive at a sentence that addresses each of the above-described factors. Given Mr. Jones' otherwise clean record, he should not be considered a "danger to the community." A downward variance would still permit the Court to fashion a sentence that more than adequately punishes Mr. Jones for his actions. The fact is that any period of

incarceration will more than punish Mr. Jones for his actions, and certainly afford adequate deterrence to criminal conduct. Finally, a downward variance would also afford Mr. Jones the opportunity to immediately return to the work force, and to prove to this Court that he can be a productive member of society.

Respectfully submitted, this 11th day of December, 2014.

/Jeffrey H. Brickman/
Jeffrey H. Brickman
Georgia Bar No. 080432
Jeffrey H. Brickman, LLC
511 East Paces Ferry Road, N.E.
Atlanta, Georgia 30305
678/420-9382 (Direct)
404/879-9704 (Fax)
Jeff@jeffbrickmanlaw.com

Darryl Slack<br>
48380 US 52 N<br>
Misenheimer, NC 28109<br>
Apt. B1

December 9, 2014

The Honorable William T. Moore<br>
United States District Court Judge<br>
Southern District of Georgia<br>
125 Bull Street<br>
Savannah, Georgia 31401

RE:     **United States v. John Jones, Case No. 4:14-257-WTM-GRS**

Dear Judge Moore:

    My name is Darryl Slack, and I have known John Jones for 20 years. John has made a great impression on my life with his dedication to help young men like myself through athletics and teaching us healthy life skills. John coached me in the City of Atlanta Parks and Recreation league as a kid, but to this day, has remained a close friend of mine and my family. It was through basketball where he taught many young boys the importance of discipline and hard work. Although we grew up in a rough community, he assured us that there was a better way of life.

    As a college coach myself, it's people like John that helped me gain the foundation it takes to mentor and to have a positive influence on young men. He has impacted a lot of lives, while also having a community and family that looks up to him.

    When I was 12 years of age John found out from my mom that I hadn't been making good grades. So he got on me about how important my education was, and I was not permitted to practice or play games until I proved otherwise. Moments like this allowed me to excel academically. I've earned both a bachelors and a master's degree.

    I am fully aware of his legal situation at this present moment, and he has explained to me that he is remorseful for the harm that he has caused. I am

Letter to the Honorable William T. Moore
Page 2

confident that John will use this experience to be a better person going forward.

This particular event that has occurred isn't even a fragment of who John truly is as a person, and I support him in this matter.

Judge Moore, thank you so much for giving me the opportunity to speak on behalf of my coach, friend and mentor, John Jones.


Sincerely,


DARRYL SLACK

Pamela C Baker
20 Somerset Hills
Fairburn, GA 30213q

December 10, 2014

The Honorable William T. Moore
United States District Court Judge
Southern District of Georgia
125 Bull Street
Savannah, Georgia 31401

RE: United States v. John Jones, Case No. 4:14-257-WTM-GRS

Dear Judge Moore:
My name is Pamela C Baker, and I have known John Jones for thirty five years or more. We were neighbors as children and have remained close family friends until now. John has been a valuable asset to the community where he grew up.

John has coached and mentored thousands of young boys in the Adamsville community for the past twenty years. He unselfishly gave of his time and money to provide activities for these kids. Even during this ordeal, he continues to coach and mentor these young boys.

I know that the sports activities that he has provided to these kids has changed their lives. The majority of these kids live in single family households with their mothers or maternal family members. John has provided that father figure so badly needed in the African American community. He picks them up if their parents aren't able to bring them to practice. He provides snacks and meals at his own expense for the kids that don't have. He visits the school when they receive special achievement awards and when they may be in trouble. He is constantly campaigning for a better tomorrow of these kids. He has made a tremendous difference in their lives.

John has also made a difference in my life as well. He has shown me that success means very little if you have no social responsibilities. He encouraged me to sponsor his teams and others over the years. I also started providing social activities to help the young women in this neighborhood.

I am confident that the legal events that have taken place with John over the past year will not be what defines him going forward. He is heroic in accepting responsibilities for his actions. He is a man of faith. He is remorseful. He continues his civic and charitable activities to this day despite of these events.

I understand that he may face incarceration for what has happened. However, I ask the court to consider the man that he is and the man that he has become as a result of the mistakes that he made. He has a devoted family that needs him. He also has and extended family of young men that he has helped that probably need him even more.

Thank you for giving me the opportunity to speak on John's behalf.

Sincerely,
Pamela C Baker

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| UNITED STATES OF AMERICA | : | CRIMINAL INFORMATION |
| --- | --- | --- |
| | : | CASE NO. 4:14-CR-257-WTM-GRS |
| v. | : | |
| | : | |
| JOHN P. JONES | : | |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of December, 2014, I filed the aforementioned Sentencing Memorandum via the CM/ECF filing system and that an electronic copy of this pleading shall be sent to:

AUSA Greg Gilluly
greg.gilluly@usdoj.gov

/Jeffrey H. Brickman/
Counsel for Defendant Jones